Edward ZARZYCKI, Plaintiff,

v.

UNITED TECHNOLOGIES CORP.,
Hamilton Standard Division,
Defendant.

No. 3:96–CV–1782 (GLG).

United States District Court,
D. Connecticut.

Dec. 18, 1998.

David S. Rintoul, Rintoul & Rintoul, West Hartford, CT, for plaintiff.

Edward J. Dempsey, United Technologies Corp., Hartford, CT, Felix J. Springer, John P. McLafferty, Day, Berry & Howard, Hartford, CT, for defendant.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Pursuant to Federal Rule of Civil Procedure 56, defendant United Technologies Corporation, Hamilton Standard Division ("Hamilton Standard") moves for summary judgment. For the following reasons, we GRANT defendant's motion (Doc. # 47).

### BACKGROUND

Plaintiff Edward Zarzycki worked for Hamilton Standard for approximately thirteen years until he was laid off in November 1992. Before the layoff, plaintiff had been assembling and testing jet fuel controls, which are carburetors for helicopters and engines. In September 1995, plaintiff was recalled by Hamilton Standard for a different job, with a different job code and job ladder. Specifically, there was an opening in the job category of an "Assembly & Test Technician II" for a position as a starter tester which involved testing the starters of jet engines.[1] Although plaintiff was offered the job, he was aware that as a condition to being hired he was required to take and pass a medical examination.

In connection with the recall, plaintiff underwent a routine medical examination which was conducted by staff at defendant's medical center. He completed a "Preplacement Assessment Examination" questionnaire in which he stated that he once had a herniated disc and back surgery. He had injured his back in July 1992 while working for defendant, and subsequently had surgery to repair a herniated disc. He was seen by his orthopedic surgeon, Dr. Aris D. Yannopoulos, several times afterwards including a visit in August 1995 due to a recurrence of back and leg pain.

As part of the exam, the staff checked his blood pressure, took x-rays, and tested his

---

1. Plaintiff claims that he was not aware of the specific job he was being considered for within the category of "Assembly & Test Technician II." Plaintiff argues that there are many job types within this category, and he asserts that he was never told he was offered a job as a starter tester. Pl.'s Local Rule 9(f) Stmt. ¶ 8, at 4. We find that this disputed fact is not material for the purposes of determining whether plaintiff was disabled within the meaning of the Americans with Disabilities Act. The crux of plaintiff's argument is that in September 1995 he was either substantially limited in the major life activity of working, or perceived as such by Hamilton Standard. Under these theories, the issue is whether plaintiff's physical impairment significantly restricted him in the ability to perform a class of jobs or a broad range of jobs in various classes. Thus, whether the job offered to plaintiff was as a starter tester is of no great concern.

urine, blood, hearing, and pulmonary functions. He then saw Joanne Sanborn, a physical therapist, who examined his back and extremities to check his stretching and bending abilities, among other things. She recommended placing plaintiff on a thirty to thirty-five pound lifting restriction. Next, plaintiff was given a general checkup by Dr. Walter J. Wiechetek (commonly known as "Dr. Wick"). He gave plaintiff the following restrictions: "1) limit lifting to 10–15 lbs. without assistance; 2) no repetitive lifting or bending, no pushing over 40 lbs.; 3) no prolonged standing; [and] 4) avoid exposure to jet fuel." Def.'s Mem. Ex. K. On October 6, 1995, Dr. Wiechetek conferred with plaintiff's doctor, Dr. Yannopoulos, who agreed with these restrictions.

Dr. Wiechetek's restrictions were forwarded to Thomas Bradley, Operations Manager at Hamilton Standard, the manager for whom plaintiff would have worked after the recall. Based on these restrictions, Bradley determined that plaintiff could not perform the requirements of the starter tester position. He then notified the Human Resources department that he had no work available for plaintiff within the restrictions. Plaintiff in turn was informed that he would not be offered the position because of the medical restrictions.

## PROCEDURAL HISTORY

Plaintiff commenced this action on September 6, 1996. In the single count of his Third Amended Complaint, he alleges a violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12117. He claims that defendant discriminated against him because they refused to hire him during the recall based on his disability and based on Dr. Wiechetek's restrictions. On June 12, 1997, this Court denied defendant's motion to dismiss, which we converted to a motion for summary judgment, because we found that plaintiff was not precluded by a collective bargaining agreement from pursuing his statutory ADA claim in federal court. Defendant now moves for summary judgment on alternate grounds claiming that plaintiff is not a qualified individual with a disability under the ADA, that plaintiff was not disabled in September 1995 and thus is not entitled to the ADA's protection, and that this Court lacks jurisdiction over the ADA claim because plaintiff failed to follow the grievance procedures and did not arbitrate his discrimination claim.

## DISCUSSION

A court may grant summary judgment only if it determines that there is no genuine issue of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). When ruling on a summary judgment motion, a court must construe the facts in a light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If there is no genuine issue of material fact, the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Although the Second Circuit has approved the use of summary judgment in employment discrimination cases, *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985), it has cautioned against granting summary judgment in an employer's favor because intent is often an issue. *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994). The Second Circuit has since reaffirmed its limited approach to summary judgment in discrimination cases. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998); *McLee v. Chrysler Corp.*, 109 F.3d 130, 135–37 (2d Cir.1997). Summary judgment, however, remains appropriate where there are no genuine issues of material fact. *McLee*, 109 F.3d at 135. Indeed, the Second Circuit has approved the its use in cases brought under Title I of the ADA where the plaintiff did not

meet the threshold burden of proving that he or she had a disability. *See Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 154 (2d Cir.1998); *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 873 (2d Cir. 1998).

■ Title I of the ADA prohibits an employer from discriminating against a qualified individual with a disability in the terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). To prove a *prima facie* case of discrimination under Title I, plaintiff must demonstrate that: (1) his employer, Hamilton Standard, is subject to the ADA; (2) he has a disability within the ADA's meaning; (3) with or without reasonable accommodation, he could perform the essential functions of the job; and (4) he was not hired because of his disability. *See Reeves,* 140 F.3d at 149–50; *Ryan,* 135 F.3d at 869–70. We first turn to the issue of whether plaintiff was disabled in September 1995.

### I. Meaning of Disability

According to the ADA, disability means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see* 29 C.F.R. § 1630.2(g). In his Third Amended Complaint, plaintiff claims that he suffers from a permanent 15% disability of his back due to a lumbar disc injury,[2] and that in September 1995 this condition substantially limited him in the major life activities of performing manual tasks, walking, standing, lifting, bending, and working. Plaintiff also asserts that in September 1995 he was treated by Hamilton Standard as having such a substantially limiting impairment. Defendant denies these allegations.

2. In plaintiff's deposition, the following discussion took place:
   Q.: In September 1995, did you consider yourself disabled?
   A.: I was told I was.
   Q.: We'll get to that. Did you consider yourself disabled?
   A.: I'm not sure how to answer that.
   Q.: Did you consider in September 1995 that you were substantially limited in any major life activities? A.: No.

### A. Disability under Section 12102(2)(A)

To determine whether plaintiff has a disability within the meaning of subsection (A) of section 12102(2), we follow the three-prong analysis set forth by the Supreme Court in *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). Under this test, plaintiff must prove each of the following elements: first, that he suffered from a physical or mental impairment; second, that he has identified a major life activity as defined by the ADA; and third, that his impairment "substantially limited" that major life activity. *Bragdon,* 524 U.S. at ——, 118 S.Ct. at 2202; *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 641 (2d Cir.1998).

### 1. Physical Impairment

■ The implementing regulations[3] provide that a physical impairment includes any physiological disorder affecting the musculoskeletal system. 29 C.F.R. § 1630.2(h)(1). The Second Circuit has held that back injuries involving a "chronic low back syndrome with left leg sciatica with increasing symptomatology" and a "chronic degenerative disk disease of [the] neck and lower back" are physical impairments because they affect the musculoskeletal system. *Colwell,* 158 F.3d at 639, 642. This Court has also held that a 10% permanent partial disability of the back is a physical impairment. *Rochford v. Town of Cheshire,* 979 F.Supp. 116, 119 (D.Conn.1997) (Dorsey, C.J.). Construing the facts in a light most favorable to plaintiff, we find that plaintiff had a physical impairment in September 1995 based on his back injury and the permanent 15% disability of his back.

### 2. Major Life Activities

In his Third Amended Complaint, plaintiff alleges that his lumbar disc injury substan-

Zarzycki Dep. of 3/11/98, Def.'s Ex. A., at 153. Despite this admission, we nevertheless consider the substance of his claim.

3. The regulations promulgated under Title I of the ADA are not binding on this Court, yet the Second Circuit has held that they are entitled to "great deference." *Francis v. City of Meriden,* 129 F.3d 281, 283 n. 1 (2d Cir.1997).

tially limits him in the major life activities of performing manual tasks, walking, standing, lifting, bending, and working. All of these are considered *per se* major life activities, except for bending. 29 C.F.R. § 1630.2(i) (defining major life activities as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working"); 29 C.F.R. pt. 1630 app. § 1630.2(i) (stating that standing and lifting are major life activities); *Reeves*, 140 F.3d at 152. In *Colwell*, the Second Circuit assumed without deciding that bending was a major life activity. 153 F.3d at 643. We make the same assumption in order to consider whether the limitations on plaintiff's list of activities are substantial. *See Reeves*, 140 F.3d at 150 (stating that the list of major life activities in the regulations is illustrative and not exclusive).

### 3. Substantially Limited in Major Life Activities

■ Although the ADA does not define the term "substantially limited," as used in the regulations it means:

(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). To determine whether an individual is substantially limited in a major life activity, a court should consider the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or expected long-term impact of the impairment. 29 C.F.R. § 1630.2(j)(2). This inquiry is individualized, and thus any determination must be made on a case-by-case basis. *Reeves*, 140 F.3d at 151.

#### a. Major Life Activities Other Than Working

Even though plaintiff did not brief these issues in his Memorandum of Law Opposing Summary Judgment, we first address his allegations in the Third Amended Complaint that his back condition substantially limited him in the major life activities of performing manual tasks, walking, standing, lifting, and bending. After reviewing the entire record, we find no evidence to support plaintiff's claims that his back injury substantially limited him in the activities of standing or walking. We thus consider his remaining claims.

■ Neither the statute nor the regulations define the term "performing manual tasks." Additionally, there is little caselaw on the term's meaning. *Umansky v. Masterpiece Int'l Ltd.*, No. 96 Civ. 2367, 1998 WL 433779, at *4 (S.D.N.Y. July 31, 1998) (citation omitted). Other courts have held that plaintiffs must show they are substantially limited in performing a broad range of manual tasks, rather than demonstrating that they are limited in performing one job-related task. *Id.* at *5; *see Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir.1995) (finding that a plaintiff was not substantially limited in any major life activity other than working because she could engage in the normal activities of daily living such as feeding herself, driving a car, carrying groceries, washing dishes, vacuuming, and picking up trash); *Khan v. Cook County*, No. 96 Civ. 1113, 1997 WL 370199, at **5–7 (N.D.Ill. June 27, 1997), (finding that a plaintiff, who could not lift more than fifteen pounds, write for more than fifteen to twenty minutes without pain, tie his shoes, carry groceries, or take out the garbage, was not substantially limited in performing manual tasks); *Ouzts v. USAir, Inc.*, Civ. No. 94–625, 1996 WL 578514, at *13 (W.D.Pa. July 26, 1996) (holding that a plaintiff was not substantially limited in performing manual tasks even though she could not carry items weighing only a few pounds or do any tasks, such as opening doors, dusting, vacuuming, or stirring with a spoon, because the plaintiff had testified she could prepare her own meals, bathe, grocery shop, drive, clean, do laundry, and take out the trash), *aff'd*, 118 F.3d 1577 (3d Cir.1997).

Here, plaintiff did not offer any medical evidence on his restricted ability to perform a broad range of manual tasks. The only evidence on this issue is plaintiff's deposition

testimony on his ability to bend and lift. Plaintiff testified about his difficulty climbing ladders, riding a bicycle, doing yard work, splitting wood, vacuuming, and moving furniture. Based on our review of the caselaw, we find as a matter of law that these limitations do not constitute a substantial limitation on performing a broad range of manual tasks.

■■■ With respect to lifting, plaintiff testified that as of September 1995, he could not hold a heavy weight in front of himself. Zarzycki Dep. of 3/11/98, Def.'s Mem. Ex. A, at 146-47. He stated that this was a necessary function when he worked as a tester and assembler in fuel controls in order to bend and put a component onto a rig while extending his arms out a few feet. *Id.* at 147. To the extent this evidence relates to plaintiff's ability to work, we consider it in the next section. Merely being unable to perform a discrete task such as heavy lifting does not mean plaintiff is substantially limited in the major life activity of lifting. *See Ray v. Glidden Co.,* 85 F.3d 227, 229 (5th Cir.1996) (granting summary judgment in an employer's favor in a case involving an employee who was given a five to ten pound lifting restriction after hip and shoulder surgery).

■■ Plaintiff also testified that Dr. Wiechetek's restrictions prevented him from doing normal activities such as vacuuming, stretching, raising his arms up to the ceiling and holding them there, and moving furniture. Zarzycki Dep. of 3/11/98, Def.'s Mem. Ex. A, at 148. The Eighth Circuit, however, has held that "a general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability within the meaning of the ADA." *Snow v. Ridgeview Med. Ctr.,* 128 F.3d 1201, 1207 (8th Cir.1997); *see Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346, 349 (4th Cir.1996) (holding that a twenty-five pound lifting restriction did not constitute a substantial limitation in the major life activity of lifting). We thus find that plaintiff has not proven he is substantially limited in lifting.

■■ With respect to bending, plaintiff testified that in September 1995 climbing up ladders was "tough" because did not have full stability in his leg muscles. Zarzycki Dep. of 3/11/98, Def.'s Mem. Ex. A, at 144. Yet, he testified that he forced himself to climb ladders, for example to clean gutters. *Id.* at 145. He could also do yard work and split wood, he needed to wear a back support belt. *Id.* at 146. He further testified that his ability to bend was restricted because he could no longer ride his bicycle as far as he once had (he stated that he used to ride 26 miles a day about three times a week). *Id.* at 145-46. Plaintiff testified that the bending restriction prevented him from doing some lifting. *Id.* at 146. These are the only statements on plaintiff's restricted ability to bend. Without more, such as supporting medical evidence, we do not find that a jury could reasonably conclude plaintiff was substantially limited in the major life activity of bending.

### b. Major Life Activity of Working

■■ When an individual claims that he is substantially limited in the major life activity of working, he must show that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Along with the factors listed in 29 C.F.R. § 1630.2(j)(2), *see supra* at 288, a court may consider the following factors to decide if an individual is substantially limited in the major life activity of working:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is

also disqualified because of the impairment (broad range of jobs in various classes). 29 C.F.R. § 1630.2(j)(3)(ii). The regulations further provide that the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i); *see Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723–24 (2d Cir.1994), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995); *see also Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir.1995) (stating that working "does not mean working at a particular job of that person's choice"). Accordingly, courts must carefully consider the kinds of jobs from which the impaired individual claims he is disqualified. *Colwell*, 158 F.3d at 645; *Heilweil*, 32 F.3d at 723.

Plaintiff contends that there is a genuine issue of material fact as to whether he was substantially limited in the major life activity of working. Pl.'s Local Rule 9(f) Stmt. ¶ 3. As support for this contention, plaintiff submitted a report from a rehabilitation consultant, Hank Lerner, who opined that the lifting restrictions imposed by Dr. Wiechetek disqualified plaintiff from 50% of the jobs for which he was otherwise qualified to perform.[4] Pl.'s Mem. Ex. G, at 5 ("Lerner Report"). Based on this percentage, plaintiff asserts that "[s]uch a substantial restriction in the number of jobs in which plaintiff can work on account of his disability demonstrates that the restrictions placed on Mr. Zarzycki disabled him in the major life activity of working." Pl.'s Mem. at 13. Plaintiff relies on *Dalton v. Subaru–Isuzu Automotive, Inc.*, 141 F.3d 667, 676 (7th Cir.1998), for the proposition that similar percentages created a question of fact on the "substantially limited" issue. Thus, plaintiff argues that this is not a situation where his disability prevents

him from performing a particular job, but rather a broad range of jobs.

In response, defendant contends that the Lerner Report is inadmissible hearsay because it is an unsworn report, and thus it asserts that plaintiff cannot rely on this report to oppose summary judgment. *See Johnson v. Chesebrough–Pond's USA Co.*, 918 F.Supp. 543, 552 (D.Conn.), *aff'd*, 104 F.3d 355 (2d Cir.1996). While we agree that the form of the Lerner Report contravenes Federal Rule of Civil Procedure 56(e),[5] we nevertheless consider the report's substance because we ultimately find that no jury could reasonably conclude that plaintiff was disabled in September 1995.

**(1) Broad Range of Jobs in Various Classes**

Plaintiff relies on the Lerner Report as evidence that his back condition precluded him from performing a broad range of jobs in various classes. To determine if an individual's impairment disqualifies the person from a broad range of jobs, the regulations provide that a court may consider the number and types of jobs different than the position at issue, with different similar training, knowledge, skills or abilities, within the relevant geographical area. 29 C.F.R. § 1630.2(j)(3)(ii)(C). The interpretive guidelines for the regulations state that:

[t]he terms "number and types of jobs" and "number and types of other jobs," as used in the factors discussed above, are not intended to require an onerous evidentiary showing. Rather, the terms only require the presentation of evidence of general employment demographics and/or of recognized occupational classifications that

---

4. Plaintiff made this argument on page 14 of his Memorandum in Opposition to Summary Judgment. We find, however, that the vocational expert's opinion was taken out of context. For the relevant portion of the opinion, *see infra* at 18.

5. *See United States v. All Right, Title and Interest in Real Property and Appurtenances*, 77 F.3d 648, 657–58 (2d Cir.) (stating that a nonmovant's submission of an unsworn letter "was an inappropriate response to the [movant's] motion for summary judgment, and the factual assertions made

in that letter were properly disregarded by the court"), *cert. denied*, — U.S. —, 117 S.Ct. 67, 136 L.Ed.2d 28 (1996); *Douglas v. Victor Capital Group*, 21 F.Supp.2d 379, 383, 391 (S.D.N.Y. 1998) (finding that two unsworn doctors' letters submitted by an ADA plaintiff were insufficient to defeat summary judgment because they were inadmissible hearsay). To properly oppose summary judgment on the basis of his vocational expert's opinions, plaintiff was required to submit Hank Lerner's affidavit, and this he failed to do. Fed.R.Civ.P. 56(e).

indicate the approximate number of jobs (*e.g.*, "few," "many," "most") from which an individual would be excluded because of an impairment.

Interpretive Guidance on Title I of the Americans with Disabilities Act, 28 C.F.R. pt. 1630 app. § 1630.2(j).

In his report, Lerner states that "I would estimate that over 50% of [light] occupations would be precluded due to occasional lifting of up to 20 lbs. and repetitive lifting." Lerner Report, at 5. We find, however, that the Lerner Report is too general to be of any use for a jury. *See EEOC v. Joslyn Mfg. Co.*, No. 95 Civ. 4956, 1996 WL 400037, at *6 (N.D.Ill. July 15, 1996) (finding that the report of a rehabilitation expert was too vague and speculative to establish that an individual was substantially limited in the major life activity of working). First, Lerner admittedly did not take into consideration the specific job market in the geographic area to which plaintiff had reasonable access, such as the area from which plaintiff could reasonably commute, Connecticut, or even the Northeast. *See* 29 C.F.R. § 1630.2(j)(3)(ii)(A); *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir.1998) (*en banc*) (reviewing a vocational expert's report that considered the number of jobs available in the plaintiff's county of residence); *Dalton*, 141 F.3d at 676 (same). Lerner explained that he relied on the 1991 Edition of the Dictionary of Occupational Titles and Selected Characteristics of Occupations. Lerner Report, at 4. He also stated that his analysis "is based on reasonable rehabilitation certainties. I have not reviewed the various occupations for their availability within the Connecticut labor market or even for the National labor market." *Id.* at 6.

Second, the Lerner Report does not contain evidence-on the approximate number of jobs from which plaintiff would be excluded because of his impairment. Rather, Lerner analyzed the job *titles* from which plaintiff might be excluded. He states:

> based on [plaintiff's] ability to perform the prior occupation [as a jet fuel technician] which is a medium exertion position, I attempted to ascertain the pool of available occupations which Mr. Zarzycki was capable of performing. I have utilized the OASYS computer software to analyze the 12,741 occupations within the Dictionary of Occupational Titles.
>
> Based on the preliminary assumption that Mr. Zarzycki had no limitations restricting him from the Test Equipment Mechanic position, I completed an analysis of the pool of occupations for which he had capacity. Of the 12,741 positions outlined within the Dictionary of Occupational Titles, 3,091 were targeted as fitting the profile of occupations that were either closely transferable to unskilled. Essentially, what this means is that based on his exertional capacity to perform the demands of the Assembly/Test Technician, and the aptitudes required of that position, that there were approximately 3,091 positions which were listed in the Dictionary of Occupational Titles for which he continued to have exertional capacity.

*Id.* at 5. He then analyzed the impact of Dr. Wiechetek's restrictions on the pool of job titles available to plaintiff, and found that jobs available to plaintiff fell into the category of a restricted range of light work and a full range of sedentary work. Based on this profile, he stated:

> [u]tilizing the OASYS software to access the Dictionary of Occupational Titles, we examined the 12,741 occupations listed. There were 1,965 occupations targeted within the light and sedentary capacity. Of these, 144 were sedentary, and 1,821 were light.
>
> The light occupations require further analysis as Mr. Zarzycki's restrictions as imposed by Hamilton Standard preclude lifting of weights greater than 15 lbs. and repetitive lifting. By definition, light work includes lifting of weights up to 20 lbs. and they may include repetitive lifting. Therefore, additional analysis of the 1,821 occupations is required. After reviewing these occupations I would estimate that over 50% of these occupations would be precluded due to occasional lifting of up to 20 lbs. and repetitive lifting. This would leave a pool of approximately 910 occupations which continue to fit the restrictions out-

lined by Hamilton Standard's medical department.

*Id.* By analyzing job titles only, and without evidence on the number of jobs contained within each job title, no jury could make a reasonable conclusion on how Dr. Wiechetek's restrictions affected the number of jobs from which plaintiff would be excluded due to his impairment. For instance, there could be 100 jobs or 100,000 jobs within each job title.

In contrast, the Third Circuit relied on a vocational expert report that concluded the plaintiff would have been:

> precluded from performing not only many of the available jobs in service-producing industries, (including transportation, wholesale/retail, finance, real estate, hospitality industries, medical services, and professional services), which made up 83% of the 41,000 non-agricultural jobs in Deane's county of residence, but also most of the jobs in the goods-producing industries (contract construction, mining, and manufacturing), which comprised the remaining 17% of available positions.

*Deane,* 142 F.3d at 145. Notably, the expert report in Deane uses the terminology accepted by the regulations; namely, that due to a 15–20 pound lifting restriction imposed on the employee after a wrist injury, the employee was excluded from *many* service-producing jobs and *most* goods-producing jobs. The Lerner Report made no such findings. Moreover, even the expert report in the case upon which plaintiff relies, *Dalton,* considered the number of jobs which individuals of similar training, knowledge, and skills could perform. 141 F.3d at 676. In *Dalton,* the court determined that a jury could reasonably find that the plaintiffs were substantially limited in the major life activity of working based on the vocational expert's opinion as to the percent reduction in the plaintiffs' job prospects, coupled with the plaintiffs' own testimony on the effect of their disabilities on their work in the jobs at issue. *Id.* To this Court's knowledge, plaintiff did not testify about any difficulty in obtaining jobs as a tester and assembler with other companies.

Beyond the Lerner Report, we consider plaintiff's work experience in jobs different than tester and assembler positions after the onset of his back injury to determine if he was disqualified from a broad range of jobs in various classes. *See Gittens v. Garlocks Sealing Techs.,* 19 F.Supp.2d 104, 111 (W.D.N.Y.1998) (considering a plaintiff's work experience in various jobs after he was removed from his position as a punch press operator, and finding that he was not limited from employment in general by his lower spine injury). From about 1994 to 1996, plaintiff testified that he worked as a painter approximately sixteen hours a week, mostly on weekends. Zarzycki Dep. of 3/11/98, Def.'s Mem. Ex. A, at 226–28. Beginning about September 1995, plaintiff worked at American Saw packaging orders for products such as saw blades. *Id.* at 220, 226. He held this job for approximately six to nine months. *Id.* at 221. From Spring 1996 to November 1996, plaintiff testified that he worked at Clean Machine Powerwash where he power-washed tractor-trailers, trucks, and houses. *Id.* at 218, 220. He stated that the job involved "stretching as high as the tractor-trailer, washing it down by hand with a brush, a long brush, cleaning out the inside of the tractors. So getting up and down out of the trucks, and a lot of walking." *Id.* at 218–19. He testified that the brushes used for the job weighed approximately ten pounds, and that the hoses weighed about five pounds. *Id.* at 219. Based on these experiences, we find that plaintiff was able to work in a broad range of jobs in various classes.

In sum, we find that the Lerner Report could not be useful to a jury. There is no other evidence on plaintiff's ability to perform a broad range of jobs in various classes, except for plaintiff's job experiences after the onset of his back injury. As just discussed, that evidence cuts against plaintiff's position. Consequently, we find there is insufficient evidence for a jury to conclude that plaintiff was significantly restricted in his ability to work in a broad range of jobs.

#### (2) Class of Jobs

We also find that the only reasonable conclusion a jury could reach is that plaintiff's back condition did not disqualify him from a class of jobs. We define plaintiff's class of jobs as being the class of tester

and assembler positions. Plaintiff's subsequent work experience in this class of jobs is relevant to the issue of whether he was actually disabled. *See Deane,* 142 F.3d at 144. The evidence suggests that after not being hired by Hamilton Standard plaintiff was able to perform the job as a tester and assembler so long as it did not require lifting over ten to fifteen pounds. Indeed, plaintiff testified that he was hired by Gerber Scientific as a tester and assembler of printers that produce graphic art such as billboards or poster boards. Zarzycki Dep. of 3/11/98, Def.'s Mem. Ex. A, at 214, 217–18. He further testified that he began his employment with Gerber as a tester and assembler of the printer components. *Id.* at 214. Thus, plaintiff's position with Gerber demonstrates that plaintiff is not disqualified from working in the class of jobs as a tester and assembler. *See Gutridge v. Clure,* 153 F.3d 898, 901 (8th Cir.1998) (holding that, although an employee's carpal and cubital tunnel syndromes left him unable to perform a job as a service technician at Computerland due to the nature of their exclusive on-site repair business, the employee was still able to function as a computer repair technician for other employers who did not require lifting as part of the job duties); *Dutcher,* 53 F.3d at 727 (finding that a welder with a serious arm injury had not presented evidence that her disability prevented her from performing an entire class of jobs because she was still able to work as a welder, though not in a position requiring substantial climbing). With no other evidence in the record, we find that a jury could not reasonably conclude that plaintiff was disqualified from an entire class of jobs as a tester and assembler.

Although we find that plaintiff was not significantly restricted in his ability to perform either a class of jobs or a broad range of jobs in various classes, we must consider whether plaintiff has produced sufficient evidence to establish a genuine issue of material fact that defendant regarded him as disabled.

### B. Disability under Section 12102(2)(C)

■■■■ To prevail on a perceived disability theory, plaintiff must prove that defendant knew of his medical condition and viewed this condition as substantially limiting a major life activity. *Reeves,* 140 F.3d at 153; *see* 29 C.F.R. § 1630.2(1) (defining the term "is regarded as having such an impairment"). Under this theory, plaintiff's actual disability is unimportant. *Francis,* 129 F.3d at 284.

■■■■ On the first element, there is no dispute that defendant knew of plaintiff's back condition. On the second element, plaintiff contends that defendant regarded him as substantially limited in the major life activity of working because it refused to give him the job as a starter tester based on Dr. Wiechetek's restrictions. Accordingly, plaintiff must produce sufficient evidence that due to his back condition defendant perceived him to be unable to work in a class of jobs or in a broad range of jobs suitable for persons of his age, experience, and training. *Ryan,* 135 F.3d at 872; *see Francis v. City of Meriden,* 129 F.3d 281, 286 (2d Cir.1997) (stating that an employee cannot merely allege that his employer regarded him as disabled, but must show that the employer regarded the employee as having a disability within the ADA's meaning).

Plaintiff specifically claims that Dr. Wiechetek and Joann Sanborn, who were both employed by Hamilton Standard, regarded him as disabled. With respect to Dr. Wiechetek, plaintiff testified:

Q.: You stated that you believe Dr. Wick perceived you as disabled, is that correct?

A.: Yes.

Q.: You stated a moment ago that you believe Dr. Wick's basis may have been information he got from the physical therapist?

A.: As far as I know.

Q.: Is there any other evidence that you have to support your contention that Dr. Wick perceived you as being disabled?

A.: Not that I really know.

Q.: When you say that Dr. Wick perceived you as disabled, are you basing that on the restrictions that he gave you?

A.: Yes.

Q.: Is there anything beyond the restrictions that he gave you that indicates to you that he perceived you as disabled?

A.: No.

Zarzycki Dep. of 3/11/98, Def.'s Mem. Ex. A, at 159–60. With respect to Joann Sanborn, plaintiff testified:

Q.: What about Ms. Sanborn, the physical therapist? On what basis do you claim that she perceived you as disabled?

A.: By the rest of the information that she had received or that I gave her.

Q.: So you're saying again because she gave you a lifting restriction, that's the basis for your claim that she perceived you as disabled?

A.: Yes.

. . . .

Q.: Do you have any reason to believe she had any other information available to her upon which she may have made that perception of you as being disabled?

A.: No.

Q.: Again, the basis of your claim that she perceived you as disabled is solely on the fact that she gave you a lifting restriction, correct?

A.: Correct.

*Id.* at 160–61.

Although plaintiff does not allege that anyone else at Hamilton Standard regarded him as disabled,[6] we nevertheless consider the testimony of plaintiff's would-be manager, Thomas Bradley, because he was the one at Hamilton Standard who recommended not hiring plaintiff. Bradley testified that he received plaintiff's Medical Placement Record, Def.'s Mem. Ex. K, which stated that plaintiff was physically qualified for the job with Dr. Wiechetek's recommended restrictions. Bradley Dep. of 1/21/98, Def.'s Mem. Ex. E, at 8. He further testified that after he reviewed the Medical Placement Record, "I told them based on the restrictions here I didn't have any work for him and it was my

recommendation not to hire him because he had an attendance issue." *Id.* He then stated that Collin Robins, from Human Resources:

called me up and asked me did I have any other work for this individual, because he already had been offered a job. And I told him no because of his restrictions. The job I had available at that time was a starter tester, and the essential portions of that job required the employee to lift starters, which is a precision piece of equipment that starts jet engines. Very tight quarters, a lot of bending, twisting. And the weight of the unit was 38 pounds to 39 pounds.

*Id.* at 8–9. Bradley was asked:

Q.: Were there any other positions available that you were supervising in September of '95, other than the starter tester?

A.: No.

Q.: So the only hiring you were doing in September of '95, that you were doing personally, was for the starter tester position.

A.: That's correct. The job that I had available at that time was starter tester.

*Id.* at 17–18. He was also asked:

Q.: To your knowledge, were there any other Assembly and Test Technician II positions available in September of '95?

A.: Not to my knowledge.

*Id.* at 22.

The excerpts from the depositions of Wiechetek, Sanborn, and Bradley make up the body of evidence on the issue of whether defendant regarded plaintiff as disabled. Based on their testimony we find that, at most, plaintiff can show that defendant perceived him as being unable to work as tester and assembler in the specific job of testing starters.

---

6. In his deposition, plaintiff was asked:
Q.: Is there anyone else at Hamilton Standard that you claim perceived you as being disabled in September 1995?

A.: No.
Zarzycki Dep. of 3/11/98, Def.'s Mem. Ex. A, at 161.

In *Ryan,* a secretary with colitis was discharged from her position at a law firm. Although one of her employer's stated that *"this* job is too stressful for you because you have colitis," the court nevertheless found that the plaintiff failed to show she was perceived as disabled. 135 F.3d at 872 (emphasis added). The court reasoned that the most the plaintiff had proven was that her employers believed her specific job at the law firm was too stressful for her. The court thus concluded that the plaintiff did not prove that her employers regarded her as substantially limited in her ability to work. *Id.*

Similarly, the evidence here establishes that Bradley decided Dr. Wiechetek's restrictions would prevent plaintiff from performing the lifting requirements of the starter tester position. The evidence also establishes that Dr. Wiechetek, and to a lesser extent Sanborn, found plaintiff qualified for the job with certain limitations. *See* Def.'s Mem. Ex. K. Indeed, Dr. Wiechetek tailored his restrictions to the position as a starter tester in the Assembly & Test Technician II job category.[7]

Without any evidence that anyone at Hamilton Standard believed that plaintiff's back injury prevented him from all positions as a tester and assembler,[8] and without any evidence that defendant regarded plaintiff's back injury as significantly restricting him in his ability to perform a broad range of jobs in various classes,[9] we find that there is insufficient evidence for a jury to conclude that defendant perceived plaintiff's back condition as substantially limiting his ability to work.

Because there is no basis for concluding that plaintiff had a physical impairment that substantially limited him in any major life activity, or that defendant regarded plaintiff as being substantially limited in a class of jobs or a broad range of jobs in various classes, we find that plaintiff has not met his threshold burden of proving that he had a disability when he was recalled to Hamilton Standard in September 1995. He has thus failed to establish a *prima facie* case under Title I of the ADA.

## II. Plaintiff's Other Contentions

Because we conclude that plaintiff is not disabled within the ADA's meaning, we find it unnecessary to consider whether he is able to perform the essential functions of his position either with or without reasonable accommodation. Similarly, we find it unnecessary to address defendant's argument regarding plaintiff's failure to follow union grievance procedures.

## CONCLUSION

For the foregoing reasons, we GRANT defendant's summary judgment motion (doc. # 47) on the single count of plaintiff's Third Amended Complaint. The Clerk of the Court is directed to enter judgment in defendant's favor and close the case.

**SO ORDERED.**

---

7. Before Dr. Wiechetek examined plaintiff, he had visited the site where plaintiff would have worked in order to assess the physical requirements of the position. Pl.'s Mem. Ex. D. Based on this on-site review, Dr. Wiechetek determined the screening that new hires would undergo during the preplacement medical assessment. *Id.*; Wiechetek Dep. of 6/13/97, Def.'s Mem. Ex. G, at 55–56. Dr. Wiechetek testified that the medical testing for new hires differed depending on the elements of the specific jobs. Wiechetek Dep. of 6/13/97, Def.'s Mem. Ex. G, at 56.

8. *See Dutcher,* 53 F.3d at 728 (noting that an employee did not offer any evidence that her employer perceived her as being unable to work in the class of jobs as a welder).

9. *See Colwell,* 158 F.3d at 646–47 (finding that police officers could not prove they were regarded as disabled because neither long-term assignment to light-duty work, nor continuous assignment to non-confrontational positions, would permit the inference that the officers were regarded as substantially limited in the ability to work).