Jessica RYAN, Plaintiff–Appellant,

v.

GRAE & RYBICKI, P.C.,
Defendant–Appellee.

No. 119, Docket 96–9681.

United States Court of Appeals,
Second Circuit.

Argued Aug. 26, 1997.

Decided Feb. 4, 1998.

John Ware Upton, New York City, for Appellant.

Timothy E. Graulich, Staten Island, NY, for Appellee.

Before: KEARSE, MCLAUGHLIN and GODBOLD,* Circuit Judges.

## BACKGROUND

MCLAUGHLIN, Circuit Judge:

Jessica Ryan has long suffered from bowel problems. She has experienced frequent and painful diarrhea, stomach cramps, and rectal bleeding. In May 1993, Ryan was diagnosed with ulcerative colitis of the rectum. The symptoms of colitis vary in intensity over time, and the condition is incurable.

Grae & Rybicki ("G & R"), a law firm, hired Ryan as a legal secretary in September 1992. Shortly after her May 1993 diagnosis, Ryan told her supervisor at G & R that she suffered from colitis. Ryan also informed her supervisor that because of her colitis, she was forced to use the bathroom frequently.

Ryan's diarrhea, cramping, and rectal bleeding became markedly worse in the summer of 1993. During this period, Ryan suffered through a nearly continuous cycle of three to four days of constipation followed by three to four days of erratic, bloody and painful diarrhea. Ryan claims that if she could not get to a bathroom within five to ten seconds of an attack she would soil her clothes. Despite these symptoms, Ryan maintains that she was always capable of performing her job as a legal secretary at G & R. Ryan emphasizes that she did not even use her allotted number of sick days or vacation time in 1993.

In June 1993, G & R moved Ryan from the second to the first floor of their offices. G & R contends that Ryan had been a secretary

---

* The Honorable John C. Godbold, of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

of marginal quality when working on the second floor and that after the move her performance became "appreciably unsatisfactory." G & R claims that one attorney, John O'Dowd, repeatedly reprimanded Ryan for misspelling words, failing to attach papers to motions, and forgetting to place enclosures in correspondence.

In the summer of 1993, another attorney, Michael Gaffney, met with Ryan to discuss her abrasive behavior toward a co-worker. In September 1993, at G & R's monthly paralegal/attorney meeting, one paralegal complained of Ryan's performance problems and her repeated use of the phone for personal reasons. Ryan responds that, despite G & R's claims, her performance was never sub-standard and that she was always a competent secretary.

On September 9, following the paralegal/attorney meeting, Gaffney and Thomas Rybicki met with Ryan to warn her that if her behavior and performance did not improve within two weeks, G & R would fire her. Rybicki then went on vacation for two weeks. When he returned to the office, he was informed that Ryan's performance had not improved. G & R claims that a decision was made then to fire Ryan in the near future.

On September 26, Ryan experienced severe stomach pain and heavy rectal bleeding. She was treated overnight at Staten Island Hospital. When she returned to work on September 28, 1993, she informed her supervisor that she had been hospitalized.

On October 1, Rybicki called Ryan into his office. Gaffney and Fredric Grae, the other senior partner of G & R, were also in attendance. Rybicki told Ryan that she was fired. According to Ryan, Rybicki also said, "I think this job is too stressful for you because you have colitis." Rybicki denies making this statement and claims that he did not even know that Ryan had colitis. Gaffney and Grae both attest that the word "colitis" was never used. Both parties agree that during this meeting, Grae told Ryan that G & R would provide her with a good employment recommendation.

On November 29, 1993, Ryan filed a complaint against G & R with the New York State Division of Human Rights, alleging that she was fired solely because she had colitis, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (McKinney 1993) ("HRL"). Ryan received a Right to Sue Letter from the U.S. Equal Employment Opportunity Commission ("EEOC") on August 4, 1994. On August 10, 1994, Ryan filed suit in the United States District Court for the Eastern District of New York (Glasser, *Judge*), alleging that G & R violated the ADA and HRL. After a period of discovery, G & R moved for summary judgment dismissing Ryan's claims.

Judge Glasser granted G & R's motion on the ground that Ryan could not make out a *prima facie* case of employment discrimination because Ryan is not disabled under the ADA. As an alternative ground, Judge Glasser held that even if Ryan is disabled, G & R showed that Ryan was terminated for a legitimate, nondiscriminatory reason. Having granted summary judgment on Ryan's federal ADA claim, Judge Glasser declined to exercise supplemental jurisdiction over Ryan's state HRL claim. Ryan now appeals.

## DISCUSSION

■ We review a district court's award of summary judgment de novo, drawing all inferences and resolving all ambiguities in favor of the nonmoving party. *See Schwapp v. Town of Avon,* 118 F.3d 106 (2d Cir.1997). Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a prima facie case. *See Wernick v. Federal Reserve Bank of N.Y.,* 91 F.3d 379, 383 (2d Cir.1996). In order to establish a prima facie case of discriminatory discharge, a plaintiff must show that: (1) her employer is subject to the ADA;

(2) she suffers from a disability within the meaning of the ADA; (3) she could perform the essential functions of her job with or without reasonable accommodation; and (4) she was fired because of her disability. *See Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1035 (2d Cir.1993); *see also Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir.1994), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

For purposes of this appeal, G & R does not dispute that it is subject to the ADA or that Ryan was able to do her job. However, G & R argues that Ryan is not "an individual with a disability" under the ADA.

Under the ADA:

The term "disability" means, with respect to an individual—

(A)a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B)a record of such an impairment; or

(C)being regarded as having such an impairment.

42 U.S.C. § 12102(2).

For the purposes of this appeal, G & R also concedes that Ryan suffers from an "impairment." Ryan, on appeal, does not claim to have had a record of an impairment. Thus, in order to present a *prima facie* case that she was disabled, Ryan had to make either one of two showings: (1) that her colitis substantially limited a major life activity; or (2) that G & R regarded her colitis as a substantially limiting impairment.

*A. Substantial Limitation of Major Life Activity*

■ The ADA does not define "major life activities" or "substantial limit[ation]." However, the regulations promulgated by the EEOC under the ADA explain these terms. While these regulations are not binding, they provide us with guidance in interpreting the ADA. *See, e.g., Francis v. City of Meriden*, 129 F.3d 281, 283 n. 1 (2d Cir.1997) (great deference owed EEOC regulations interpreting ADA).

The regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing,

hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The listed activities are "examples only," and "other major life activities include, but are not limited to, sitting, standing, lifting, or reaching." U.S. Equal Employment Opportunity Commission, *Americans with Disabilities Act Handbook* I–27 (1992) ("*ADA Handbook*").

"Substantially limits" is defined as:

(i)Unable to perform a major life activity that the average person in the general population can perform; or

(ii)Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

The regulations further counsel that:

[t]he following factors should be considered in determining whether an individual is substantially limited in a major life activity:

(i)The nature and severity of the impairment;

(ii)The duration or expected duration of the impairment; and

(iii)The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

*Id.* § 1630.2(j)(2).

■ Although almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled. Thus, in assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those activities. *See, e.g., Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir.1995) ("not every impairment that affect[s] an individual's major life activities is a substantially limiting impairment").

Ryan presents two arguments in support of her claim that her colitis substantially limits a major life activity. First, she main-

tains the ability to control the elimination of waste is a major life activity, although the regulations do not define it as such, and that her colitis substantially limits this activity. Second, she asserts that her colitis substantially limits her ability to care for herself. "Caring for oneself" is defined by the regulations as a major life activity.

### 1. Ability to Control Elimination of Waste

■ Assuming, without deciding, that the ability to control one's elimination of waste is a major life activity, Ryan has failed to show that this activity was substantially limited by her colitis.

As explained above, we consider three factors in determining whether Ryan's impairment constitutes a substantial limitation. See 29 C.F.R. § 1630.2(j)(2).

The first factor, the nature and severity of the impairment, weighs in favor of finding a substantial limitation. The nature of Ryan's impairment goes to the very heart of her ability to control the elimination of waste. Moreover, when Ryan's colitis is symptomatic, it appears to severely limit her ability to control her elimination of waste. Indeed, at times, she must run to the bathroom with only seconds' notice, and sometimes soils herself. Thus, when symptomatic, Ryan's impairment is severe.

The second factor, the duration or expected duration of the impairment, arguably cuts both ways, but in the end weighs against a finding of substantial limitation. "The term 'duration' . . . refers to the length of time an impairment persists." 29 C.F.R. Part 1630, App. § 1630.2(j). On the one hand, Ryan's colitis appears to have no cure, and will trouble her for the rest of her life. Thus, its duration could militate for a finding of substantial limitation. However, although Ryan's colitis will persist for her entire life, her colitis is symptomatic only at certain times, and can be asymptomatic for long periods. Indeed, Ryan testified at her February 23, 1996 deposition that she had not been significantly bothered by her colitis since July or August of 1994. Moreover, Ryan stated that she suffers severe symptoms only in the summer months. Thus,

although she will always be bothered by the possibility of a colitis attack, she will not at all times suffer from the symptoms (and concomitant limitations) of her colitis. We find that although Ryan's colitis is a permanent affliction, the fact that it is asymptomatic for long periods, and varies in intensity, weighs against a finding of substantial limitation.

The final factor, the expected long term impact resulting from the impairment, also weighs against a finding of substantial limitation. "[T]he term 'impact' refers to the residual effects of an impairment." Id. Although Ryan will always suffer from bowel problems, she acknowledges that her problems vary in intensity, and are almost absent outside of summer. Thus, any residual effects of her colitis may be felt only for three to four months a year. Moreover, Ryan's deposition testimony demonstrates that she can go for years without significant symptoms. Thus, we conclude that Ryan has failed to raise a triable issue of fact whether her colitis will have significant residual effects on her ability to control her elimination of waste.

### 2. Ability to Care for Oneself

■ Ryan also has failed to raise a triable issue of fact whether her colitis substantially limits her ability to care for herself.

The nature and severity of the limitation on Ryan's ability to care for herself weigh only slightly in favor of finding a substantial limitation. When her colitis is symptomatic, Ryan always must be near a restroom and at times soils herself. Ryan's symptoms therefore affect the "manner or duration under which" she cares for herself. However, even when her colitis is symptomatic, Ryan is still able to get dressed, groom herself and make her way to work. See Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 (5th Cir.1995) ("caring for oneself" encompasses normal activities of daily living; including feeding oneself, driving, grooming, and cleaning home). Thus, although her colitis affects her ability to care for herself in some respects, the severity of the limitation caused by her colitis is limited.

872

The second factor, the duration or expected duration of the impairment, does not weigh in favor of a finding of substantial limitation. As explained in relation to her ability to control her elimination of waste, to the extent that Ryan's colitis limits her ability to care for herself, it does so only periodically.

Finally, the expected long term impact resulting from the impairment also weighs against a finding of substantial limitation. The fact that Ryan suffered no limiting symptoms for two years demonstrates that the long term impact of her colitis on her ability to care for herself may be slight. Certainly, Ryan has not presented evidence demonstrating any significant long term residual effects on her ability to care for herself.

Thus, we conclude that Ryan has failed to demonstrate that her colitis substantially limited either her ability to control her elimination of waste, or her ability to care for herself.

■ We note that our rejection of Ryan's claim of disability is based upon the evidence, or lack thereof, of a substantial limitation caused by her colitis. Because the determination whether an impairment "substantially limits" a major life activity is fact specific, our decision does not mean that colitis may never impose such a limitation. *See Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 59 (4th Cir.1995).

For similar reasons, the cases which have considered whether an individual with colitis is "disabled" do not affect the conclusion we reach here. *Compare Branch v. City of New Orleans,* Civ. A. No. 93–1273, 1995 WL 295320 (E.D.La. May 8, 1995) (colitis may be a disability), *aff'd,* 78 F.3d 582 (5th Cir.1996), *and Jones v. Hodel,* 711 F.Supp. 1048, 1049 (D.Utah 1989) (same), *with Ferguson v. Western Carolina Reg'l Sewer Auth.,* 914 F.Supp. 1297, 1299 (D.S.C.) (evidence did not demonstrate that irritable bowel syndrome and diverticulitis were disabilities), *aff'd,* 104 F.3d 358 (4th Cir.1996), *and Caporilli v. City of Rome,* No. 85–CV–1320, 1992 WL 209327 (N.D.N.Y. Aug. 13, 1992) (evidence did not demonstrate that colitis was a disability).

## B. Regarded as Disabled

Ryan argues that even if her impairment does not substantially limit a major life activity, she is, nonetheless, disabled simply because G & R regarded her as disabled. The ADA defines a person as disabled when an employer "regard[s]" her as having an impairment "that substantially limits one or more ... major life activities." 42 U.S.C. § 12102(2)(A) & (C). The ability to work is considered a "major life activity" under the regulations. *See* 29 C.F.R. § 1630.2(i). Ryan argues that she is disabled because G & R perceived her as being substantially limited in her ability to work.

■ "Substantially limit[ed]" in the ability to work means that a plaintiff is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs." 29 C.F.R. § 1630.2(j)(3)(*i*). "An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Heilweil,* 32 F.3d at 723; *see also Wernick,* 91 F.3d at 383–84 (inability to perform only current job not substantial limitation).

■ Thus, in order to prove that G & R perceived her as substantially limited in her ability to work, Ryan bore the burden of presenting evidence that G & R perceived her to be incapable of working in a broad range of jobs suitable for a person of her age, experience, and training because of her disability. She failed to present such evidence.

Ryan alleged that at the time of her termination, Rybicki told her that "this job is too stressful for you because you have colitis." However, Ryan also admitted at her deposition that at the same meeting she was told, "you're a nice girl, we appreciate what you did with the computer, and we'll give you a good recommendation."

Construing these statements in Ryan's favor, as we must, we find that, at most, they demonstrate that G & R believed that Ryan's position *at* G & R was too stressful for her. Rybicki referred only to "this" job, clearly referencing the position at G & R from which Ryan was being fired. Moreover, the fact that G & R was willing to provide Ryan with

a good employment recommendation suggests that it did not perceive her as being unable to perform related jobs. Indeed, it appears that G & R thought her well qualified to work with computers. Thus, Ryan failed to demonstrate that G & R perceived her as being substantially limited in her ability to work.

*C. Legitimate, Nondiscriminatory Reason*

Judge Glasser properly granted summary judgment on the ground that Ryan failed to present a *prima facie* case under the ADA. Thus, we need not review Judge Glasser's alternative holding that G & R was entitled to summary judgment because it advanced a legitimate, nondiscriminatory reason for Ryan's termination.

### CONCLUSION

Plaintiff failed to demonstrate that she is "an individual with a disability" under the ADA. She thus failed to present a *prima facie* case of employment discrimination. Accordingly, the judgment of the district court is hereby AFFIRMED.