**David B. SCHAPIRO, Plaintiff,**

v.

**NEW YORK CITY DEPARTMENT OF HEALTH and the City of New York, Defendants.**

No. 95 Civ. 5846(VM).

United States District Court, S.D. New York.

Jan. 10, 2001.

ORDER

MARRERO, District Judge.

## I. INTRODUCTION

Plaintiff David B. Schapiro ("Schapiro") brings this action against his former employers, the City of New York and its agency, the New York City Department of Health ("DOH") (collectively, the "City"). Schapiro alleges disability discrimination in violation of the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101 *et seq.*, as well as a common law negligence claim. The City now moves for summary judgment. For the reasons discussed below, the motion is granted.

## II. BACKGROUND

Schapiro worked as a Staff Analyst for the DOH from 1989 until 1994 (Deposition of David Schapiro of May 12, 1998 ("Schapiro Dep. I"), attached as Exhibit A to the Declaration of Paul Aronson in Support of Defendants' Motion, at 31; 46). Schapiro claims that during his employment with

DOH he became disabled by respiratory problems that made it difficult for him to work or breathe, and that the City failed to accommodate his disability, rendering him unable to continue working there and exacerbating his impairment.

According to Schapiro, his respiratory impairment began in 1989 when construction and poor ventilation in the office building where he worked caused him to develop respiratory problems that became increasingly severe as he remained in the building (Schapiro Dep. I at 111–118; Schapiro Affidavit dated March 14, 2000 ("Schapiro Aff."), attached as Plaintiff's Exhibit 2 ("Pl.Ex." 2) to Declaration of Michael A. Weinstein in Opposition to Defendants' Motion ("Weinstein Decl."), at ¶¶ 4–5). After taking an extended leave of absence to recuperate from his respiratory ailments, including diagnosed allergic rhinitis symptoms and associated chronic sinusitis (Report of Dr. Michel German, attached to Weinstein Decl. as Pl.Ex. 5), and after obtaining a transfer from the previous location, Schapiro returned to work in October 1990 in a building where he felt well enough to work despite some persistent pain in his lungs and ringing in his ears (Schapiro Dep. I at 160–162).

In the spring of 1991, however, the City moved Schapiro's work unit to a new building at 253 Broadway in Manhattan (Plaintiff's Statement Pursuant to Local Rule 56.1 ("Pl.Rule 56.1 Statement") at ¶ 18). As soon as the unit arrived there, Schapiro and his coworkers expressed dissatisfaction with the work area there (Pl.Rule 56.1 Statement at ¶ 19). In particular, the workers complained that the area was dirty and poorly maintained, with decaying carpeting and flooring, odors emanating from the radiator, and abundant pigeon excrement on the window sills (Schapiro Dep. I at 179–80, 186). Several employees, including Schapiro, complained to City management about the conditions, and Schapiro eventually also filed official grievances through his union asking that the room be cleaned and well-maintained or that he be moved (Pl.Rule 56.1 Statement at ¶¶ 23, 25–26; Schapiro Dep. I at 181; Pl.Exhs. 14; 17; 18). According to Schapiro, the rug never was shampooed and the room was not cleaned to his satisfaction. However, the City finally relocated him on August 14, 1991 to another room in the building which had air conditioning and tile floors with no carpet (Pl.Ex. 19; Schapiro Deposition of May 13, 1998 ("Schapiro Dep. II"), attached as Pl.Ex. 20 to Weinstein Decl., at 23–25). Although this room in principle met Schapiro's needs, he claims that within days it, too, became intolerable as an employee with "extremely offensive body odor" was moved into the room, forcing Schapiro to move back out of that room (Schapiro Dep. II at 23–25).

Schapiro claims that he persisted in requesting a transfer after that event, but that his requests were denied. In the spring of 1992, Schapiro was advised by his supervisor, Scott Glatzer, that Schapiro's further absences would be charged as leave without pay and that Schapiro should consider either quitting or applying for disability (Pl.Rule 56.1 Statement at ¶¶ 29, 30, Defendants' Rule 56.1 Statement at ¶ 20). Schapiro, however, says that he did not feel completely disabled at the time, believing that under improved conditions he could function well in his job (Schapiro Dep. II at 53, 54); he continued instead to protest the poor condition of his assigned office, providing letters from doctors about the environment's negative effects on his health and following up with grievances filed with the DOH. (Pl.Rule 56.1 Statement at ¶¶ 30–36, 45–46). In 1992, Schapiro had filed one such grievance, which the DOH then rejected at two stages of review. According to Schapiro, the DOH's rejection was based on a misinterpretation

of already ill-founded conclusions of an examining doctor working for the City who considered it his duty to return Schapiro to work. Schapiro pursued the grievance through a third stage of review, leading to a "Stage III" hearing in February 1993, but no ruling was ever rendered during his employment with the City, despite his requests for a decision (Schapiro Aff. at ¶ 26; Pl.Ex. 39).

Meanwhile, in 1993 and 1994, inspections of the 253 Broadway building revealed unsafe airborne lead levels (Pl.Ex.30), generally poor air quality, dirty rugs, a mice infestation and numerous other violations of the City's own health and/or building codes (Pl.Ex.34, 36–38, 40). At the same time, Schapiro concedes that the City attempted to put grids on the windowsills to prevent pigeons from landing there, replaced air conditioners, and, towards the end of his employment at the City, tore up the carpeting in his area. Yet, Schapiro alleges that these measures failed to remedy the environmental problems of the room, exacerbating his respiratory problems, and that a doctor warned him and his employer that the effects on his health would worsen and be irreversible (Pl.Rule 56.1 statement at ¶ 46).

In November 1993, Schapiro applied for early retirement due to "chronic job related illness," and he ultimately retired in June 1994 (Pl.Rule 56.1 Statement at ¶ 45; Pl.Ex. 40). Having received no word on the outcome of his grievance and no response to his complaints to management about the physical conditions of the workplace, Schapiro filed a disability discrimination claim with the Equal Employment Opportunity Commission ("EEOC") in May 1994 (Pl.Rule 56.1 Statement at ¶ 47). After receiving a right to sue letter from the EEOC dated May 12, 1995, Schapiro timely filed the instant action.

The City seeks summary judgment in its favor on several grounds. First, it argues that Schapiro is not disabled within the meaning of the ADA and that, in any case, the accommodation he sought was not reasonable. The City further asserts that the events underlying most of Schapiro's claims are time-barred because (1) claims of injury from alleged acts of discrimination occurring prior to July 26, 1992 are not covered by the ADA, which became effective on that date, and (2) his claims arising prior to July 31, 1993 did not occur within 300 days of his EEOC filing, as required by 42 U.S.C. § 2000e–5(e) (incorporated into ADA by reference in 42 U.S.C. § 12117(a)). Additionally, the City argues that Schapiro cannot recover for any claims arising after his June 1994 retirement—both because (1) he filed a claim for Social Security Disability Insurance that asserted total inability to work, so that he cannot prove that he was "otherwise qualified" as required by the ADA, and (2) he failed to mitigate his damages by seeking employment elsewhere. Finally, the City contends that any common law claims for employment-related injuries are covered by the New York Worker's Compensation Law and may not be asserted as negligence claims.

## III. DISCUSSION

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he court's responsibility is not to resolve disputed issues of fact but to assess whether there are factual issues to be tried." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986). The Court must resolve all doubts and ambiguities and

draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The movant bears the burden of demonstrating to the Court that there is no material issue of fact to be tried and that summary judgment is merited. *See Matsushita*, 475 U.S. at 586 n. 10, 106 S.Ct. 1348. Once this burden has been carried, the party opposed to the motion must come forward with "specific facts showing that there is a genuine issue for trial," meaning that the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *See id.*, at 587, 106 S.Ct. 1348. The substantive law will identify which facts are material, and only factual disputes which might affect the outcome of the case under the governing law will be considered. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. *Time Bar*

■ The City correctly asserts that all claims arising prior to the effective date of the ADA, July 26, 1992, are time-barred because the ADA has no retroactive effect. *See Smith v. United Parcel Service*, 65 F.3d 266 (2d Cir.1995). Any allegedly discriminatory actions taken prior to July 26, 1992 cannot serve as the basis for a claim.

■ Moreover, as the City contends, any of Schapiro's claims arising prior to July 31, 1993 are time-barred. A complainant must file a complaint with the EEOC within 300 days of the allegedly discriminatory actions, including failure to make reasonable accommodation. *See* 42 U.S.C. § 12117(a); *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir.1999). Schapiro filed his EEOC complaint on May 27, 1994. Thus, the Court also grants

the City's motion as to those actions occurring more than 300 days earlier—that is, prior to July 31, 1993—although the Court will consider earlier evidence of Schapiro's complaints and the City's responses as relevant background for Schapiro's claims here.

### C. *Elements of Prima Facie Case*

■ To establish a prima facie case under the ADA, a plaintiff must show "(1) that the employer is subject to the statute under which the claim is brought, (2) that [he] is an individual with a disability within the meaning of the statute in question, (3) that, with or without reasonable accommodation, [he] could perform the essential functions of the job, and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation." *Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1515 (2d Cir.1995); *accord Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir.2000).

At this stage of the instant litigation, the first element is not at issue—the parties do not dispute that the City DOH is subject to the ADA. The third criterion is also not at issue with respect to the time when Schapiro was still employed at DOH. The Court finds that the record before it indicates that Schapiro was capable of performing the essential functions of his job during the relevant time period of his employment after July 31, 1993. There is no record of dissatisfaction by the City with Schapiro's performance as a Staff Analyst. When Schapiro did leave his job with the City in May 1994, it was on a voluntary early retirement plan rather than as a result of his having been fired or even censured for his job performance. The main issues in dispute with respect to Schapiro's ADA claim, therefore, are whether his impairment could qualify as a disability under the ADA and whether he

sought from his employer a reasonable accommodation that the employer did not provide.

To demonstrate a disability under the ADA, a plaintiff must prove that he has a physical or mental impairment that substantially limits one or more of his major life activities; that he has a record of such impairment; or that he is regarded by the employer as having such an impairment. *See* 42 U.S.C. § 12102(2); *Heilweil v. Mount Sinai Hospital,* 32 F.3d 718, 722 (2d Cir.1994). Here, Schapiro does not allege or provide any facts to show that the City regarded him as having such an impairment or that the City discriminated against him based upon such a perception or on a record of his having such an impairment. The Court thus focuses on whether Schapiro has sufficiently established that he has an impairment that substantially limits a major life activity.

According to EEOC regulations, "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i); *see also Reeves v. Johnson Controls World Svcs., Inc.,* 140 F.3d 144, 152 (2d Cir.1998) (finding that certain activities, including breathing, are recognized "by EEOC regulations and by our precedents as major life activities per se."). A substantial limitation exists if the impairment's effects leave a plaintiff significantly restricted as to the condition, manner or duration under which the individual can perform the activity as compared to most people. In the particular context of assessing limitations to the major life activity of working, the comparison is to people of common training, knowledge, skills and abilities in jobs involving similar skills in the geographic location. *See* 29 C.F.R. § 1630.2(j)(1); *Bartlett v. New York State Bd. of Law Examiners,* 226 F.3d 69, 83 (2d Cir.2000).

■ To assess whether an impairment is substantially limiting, courts in this circuit typically look to three factors: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact resulting from the impairment. *See Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 643 (2d Cir. 1998) (citing 29 C.F.R. § 1630.20(j)(2)(i)–(iii)). This inquiry must take into account the effects of corrective medications or other remedial measures. Thus, a person is not disabled where an impairment may be corrected by medications or other measures. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 482, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *Muller v. Costello,* 187 F.3d 298, 314 (2d Cir.1999).

The City contends that Schapiro was not disabled under the ADA because his physical impairment manifested itself only in a particular work site and did not substantially limit any major life activity. Schapiro, however, contends that his impairment substantially limits the life activity of "breathing," and that he was then disabled on this basis.

■ To the extent that Schapiro's case is based on a claim that he is substantially limited in the major life activity of "working," the Court finds that he has failed to establish a prima facie case as to that claim. Schapiro has adduced no evidence that he was substantially limited in his ability to work in similar jobs in the geographical area. On the contrary, Schapiro has argued that the reasonable accommodation he was seeking in order to be able to continue working in the same capacity was simply a transfer to a different environment and to have the work area where he was assigned maintained in cleaner conditions. Schapiro describes how he was

able to work effectively at the time of his employment at DOH in a clean, well-ventilated work place, and he asserts that equivalent positions existed, not simply in the New York City area, but with DOH itself as well as other City agencies, during the time. Because Schapiro thus was not substantially limited in his ability to perform in a broad class of jobs, rather than his own particular one, he cannot establish that he was disabled under the ADA with respect to his ability to work. *See Sutton,* 527 U.S. at 491–92, 119 S.Ct. 2139 (citing 29 C.F.R. § 1630.2(j)(3)(i)); *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 723 (2d Cir.1994) ("An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one.")

■ Similarly, the Court finds that Schapiro has failed to allege facts sufficient to sustain his claim that he was substantially limited in his ability to breathe. In particular, Schapiro does not present facts indicating significant restrictions of his activities outside work during the relevant time period, as he must to demonstrate a breathing disability. *See Heilweil,* 32 F.3d at 723; *Muller,* 187 F.3d at 314. Courts in this Circuit analyzing analogous facts, involving symptoms that appear occasionally and cause inconvenience, as opposed to substantial limitation, of a plaintiff's ability to breathe, have found them insufficient to support a claim of discrimination. *See Muller,* 187 F.3d at 314; *see also Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 17 F.Supp.2d 271, 273 (S.D.N.Y.1998) (granting summary judgment against the plaintiff alleging breathing disability based on finding that "occasional trouble breathing" did not constitute a substantial limitation). In *Muller,* the Second Circuit found that a jury had erred in finding a disability with re-

spect to the plaintiff's ability to breathe despite evidence that the plaintiff's "asthma could be triggered by any number of environmental irritants" and that he had suffered a severe asthma attack as a result on one occasion. *Id.,* 187 F.3d at 314.

In support of his case, Schapiro attests that there are things he can not do physically "to the same degree," referring to physical labor and repairs around the house (Schapiro Dep. II at 171.) However, he does not provide any evidence of *severe* general limitations of his outside activities related to breathing. Although Schapiro describes suffering several asthma attacks that resulted in hospital stays, only one of these occurred during the relevant time period, in October 1993. Otherwise, during that time, he consistently portrayed his illness as a chronic "job-related" illness which did and would get better under better office conditions.

As Schapiro currently describes his impairment, while he has experienced some shortness of breath and tinnitus at all times, the severe symptoms that substantially limit his ability to breathe have been far more sporadic. In *Ryan v. Grae & Rybicki,* 135 F.3d 867, 871 (2d Cir.1998), the plaintiff's symptoms of colitis were similarly sporadic and varying in intensity. There, the Second Circuit, rejecting the plaintiff's claim that she was disabled with respect to her ability to control her elimination of waste, found that, "although Ryan's colitis is a permanent affliction, the fact that it is asymptomatic for long periods, and varies in intensity, weighs against a finding of substantial limitation," both with respect to its duration and long-term impact. *Ryan,* 135 F.3d at 871. The facts presented by Schapiro do not distinguish his impairment as any more disabling than that which the Circuit Court in *Ryan*

found not to be a disability under the ADA.

Thus, applying the three factors set forth in *Colwell*, 158 F.3d at 643, to Schapiro's claim that he suffered a breathing disability during his employment with the City during the period at issue, the Court finds that Schapiro has not presented facts sufficient to support his claim under the ADA.

### E. *Negligence Claim*

 Next, the City contends that Schapiro fails to state a claim for common law negligence in his second claim because such an action is barred by New York's Worker's Compensation Law. The Court agrees. In New York, when an employee "is injured by the negligence or wrong of another in the same employ" the exclusive remedy for such injury is through the Worker's Compensation Law. *See* (N.Y.Work.Comp.Law § 29(6)). *See Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997). While the exclusive remedy provision of the Worker's Compensation Law in New York does not bar allegations by an employee of intentional or deliberate acts by the employer directed at causing harm to the employee, this exception clearly does not apply to the negligence claim asserted by Schapiro in this case. *See Gagliardi v. Trapp*, 221 A.D.2d 315, 633 N.Y.S.2d 387, 388 (2d Dep't 1995). In any case, Schapiro has not responded to this averment of the City. The Court, therefore, enters judgment in favor of the City on Schapiro's negligence claim.

### IV. *CONCLUSION AND ORDER*

For the foregoing reasons, it is hereby

ORDERED that the City's motion for summary judgment in this action is granted; and it is further

ORDERED that the Clerk of Court close this case.

SO ORDERED.