John A. MACGOVERN, Plaintiff,

v.

HAMILTON SUNSTRAND CORP., formerly known as Hamilton Standard Corp., and United Technologies, Hamilton Sunstrand Division, Defendants.

No. 3:00CV449 (JBA).

United States District Court,
D. Connecticut.

Nov. 8, 2001.

John R. Williams, Dawne Westbrook, Williams & Pattis, New Haven, CT, for Plaintiff.

Felix J. Springer, Daniel Adam Schwartz, Day, Berry & Howard City-place, Hartford, CT, for Defendants.

*Ruling on Defendant's Motion for Summary Judgment*
*[Doc. # 29]*

ARTERTON, District Judge.

John MacGovern filed this suit against his employer, Hamilton Sunstrand Corp. ("Hamilton"), under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"). In his complaint he alleges that he is disabled due to major recurrent depression and seasonal affective disorder, and he claims Hamilton has failed to reasonably accommodate this disability.

Hamilton has moved for summary judgment, claiming that MacGovern is not disabled under the ADA.[1]

The Court will grant Hamilton's motion. As set out below, while a reasonable jury could find that MacGovern is "impaired" by his depression and seasonal affective disorder, there is insufficient evidence in the record to support a finding that MacGovern is "disabled" under the ADA.

I. Factual Background & MacGovern's Claim

This dispute arises out of the events of Saturday, June 28, and Sunday, June 29, 1997, when MacGovern, an electronic technician, was required to work overtime at Hamilton. MacGovern claims that although his depression prevented him from working that weekend, Hamilton nevertheless forced him to work, in violation of the ADA.

Four days after the weekend in question, MacGovern brought in a note from his physician informing Hamilton that while MacGovern was "able to fully function at work," "[m]andatory overtime places him at risk for recurrence of the depression," and that MacGovern instead "ought to be offered the opportunity to perform overtime work on a voluntary basis." Pl.'s Local Rule 9(c) Statement Ex. C.

Thereafter, Hamilton restricted MacGovern from working any overtime, whether voluntary or mandatory, for six months. MacGovern claims this restriction is not a reasonable accommodation of his disability because his disability only prevents him from being *required* to work overtime, and that he should nonetheless have been permitted to work overtime if he had so chosen. A portion of the damages he claims in this suit is the value of the overtime he would have been offered, and may have worked, but for the restriction.

A. MacGovern's Condition

While MacGovern now believes he has suffered from depression for about thirty years, he first sought treatment approximately ten years ago. His symptoms at that time included feelings of hopelessness and anger, as well as difficulty sleeping and no desire to socialize with others.

At his wife's insistence, MacGovern began seeing a psychiatrist, Dr. Louis Cohen, in 1991. Cohen diagnosed MacGovern's condition as major recurrent depression and seasonal affective disorder, and has treated the condition with medication and psychotherapy. Cohen is still MacGovern's psychiatrist.

MacGovern describes his condition as making activities more difficult for him rather than precluding him from doing

---

**1.** In the alternative, Hamilton argues that it has reasonably accommodated MacGovern. In light of the Court's holding on the threshold issue of 'disability,' Hamilton's alternative argument is not addressed.

certain activities altogether,[2] and characterizes its cumulative effects as pervasive:

> It affects all aspects of my relationships, how I deal with people, places I go, things I do, how I interact with my kids, my wife, my friends and it varies depending on the time of the year and the stresses that I have, how I look at things. It's not something that comes and goes. It's with me all the time. It's just [exacerbated] at certain times.

MacGovern Dep. at 208.

MacGovern's depression and seasonal affective disorder, however, have not by his own account interfered with his ability to do his job:

Q: And you haven't had any problems working I take it?

A: I have had some problems getting to work.

Q: How so?

A: Motivational difficulties.

Q: When you are actually at work, has the depression ever interfered with your ability to perform your job at work?

A: No.

MacGovern Dep. at 190.

He credits the technical nature of his work for his continued ability to perform his job duties despite his condition:

Q: [Y]ou have a pretty technical job?

A: That's what allows me to do it with the condition I have. I just absorb myself in it. You can focus on what you're doing without any distractions.

MacGovern Dep. at 190.

Cohen is using medication, counseling and light therapy to treat MacGovern's condition, and while the symptoms have diminished and MacGovern is better able to manage the depression, it is still more severe in the winter months than in the summer.

When MacGovern's condition was initially diagnosed in 1991, he spoke about it with his coworkers, and at some point prior to 1997, MacGovern told his foreman at the time, Ernie Laffert, that he suffered from seasonal affective disorder. MacGovern contends that Laffert's nickname for him, "Sunshine," is evidence of Hamilton's awareness of his condition.

### B. The Weekend of June 28–29th

On Thursday, June 26, 1997, Don Grant, MacGovern's supervisor, asked everyone in MacGovern's job code to work overtime for the upcoming weekend, and MacGovern declined. Later that day, Grant spoke again with MacGovern. This time, Grant indicated that the request was not voluntary, and the MacGovern was required to work overtime. MacGovern refused.

Grant approached MacGovern a third time on Thursday, June 26th, and informed him that if he did not report for duty on the upcoming weekend, he would lose his job. Grant did not tell MacGovern why he had been selected for mandatory overtime, and MacGovern did not tell Grant why he refused to work.

MacGovern had never in the past been required to work overtime, and he became very upset. MacGovern asked for a shop steward, and Grant complied. He arranged for MacGovern to meet with Charles Spinelli, a representative of MacGovern's union. Spinelli came to MacGovern's work area and spoke with

---

**2.** "I couldn't say what it was I was unable to do .... It was difficult for me to do things. The conditions made things difficult for me. I wouldn't say that I was unable to do it. Things made my depression worse." MacGovern Dep. at 44.

him about the required overtime on either Thursday or Friday, but in any event prior to the weekend in question. Spinelli advised MacGovern that he could file a grievance, and that Spinelli would speak to Grant on MacGovern's behalf. MacGovern does not recall whether he told Spinelli why he did not want to work that weekend, because "[i]t wasn't an issue." MacGovern Dep. at 69.

After speaking with Spinelli, MacGovern approached Grant for their fourth conversation regarding the upcoming weekend, and asked Grant if he (MacGovern) could speak with someone from Hamilton's personnel department.

MacGovern spoke with "Jeff" from personnel on Friday, June 27, and Jeff told him that he was being forced to work so that Hamilton could schedule work demands. MacGovern mentioned for the first time that working the upcoming weekend would implicate his depression: "I told him that because of my depression they shouldn't force me to work Saturday and Sunday." MacGovern Dep. at 75.[3] MacGovern's position that he should not be forced to work Saturday and Sunday because of his depression "was [his] own personal belief" and not something Dr. Cohen had advised. MacGovern Dep. at 75–76. MacGovern also told Jeff that Hamilton's requiring him to work the weekend would implicate the ADA.

MacGovern had another conversation with Spinelli prior to the weekend. Spinelli advised him that he had brought MacGovern's complaint to the attention of the union, and that it was his advice to

work the weekend as required and pursue the matter as a grievance.

MacGovern did, in fact, work both Saturday and Sunday, although he did not work a full shift of eight hours on either day.[4]

Hamilton claims that mandatory overtime was necessary and MacGovern was selected because he had the least number of accrued overtime hours in that calendar year. As evidence of this assertion, Hamilton offers the affidavit of Charles Maggio, MacGovern's department manager in 1997, and copies of Hamilton's overtime logs which show MacGovern did, in fact, have the fewest overtime hours for the year.

MacGovern's Local Rule 9(c)(2) Statement denies that overtime was necessary on June 28–29th, and denies that MacGovern had the fewest accrued overtime hours. MacGovern disputes Hamilton's claimed process by citing to his and Spinelli's depositions, and claims that when overtime is required, employees are simply asked. Contrary to MacGovern's assertions, the fact that employees are asked is not in conflict with Hamilton's stated process. In fact, Hamilton acknowledges that first, employees are asked to work overtime, and then, when no one volunteers, the employee with the fewest accrued hours is automatically selected.

Further, although the Amended Complaint alleges that "because of his aforesaid disability, the defendant asked the plaintiff to work overtime,"[5] MacGovern stated at his deposition that he still does not know why Hamilton required him to

---

**3.** MacGovern did not, however, tell Jeff that he had been medically diagnosed as suffering from depression or seasonal affective disorder, that he was under a doctor's care for those conditions or that he was taking medication for those conditions.

**4.** MacGovern worked 7.2 hours on Saturday and 5 hours on Sunday, for a total of 12.2 hours for the weekend. As he had refused all overtime offered earlier that week, he worked a total of 52.2 hours between Monday, June 23rd and Sunday, June 29th.

**5.** Am. Compl. ¶ 8

work overtime,[6] and there is no evidence in the record disputing Hamilton's evidence that overtime was necessary and that MacGovern was selected based on the company procedures described above.

### C. Events After June 29, 1997

MacGovern visited Dr. Cohen's office the following week because he "was feeling very, very bad" because of stress and anxiety that he believed was caused by being required to work overtime the prior weekend. MacGovern Dep. at 96. At MacGovern's request, Dr. Cohen drafted the following letter:

> To Whom it May Concern,
>
> I am writing this letter on behalf of John MacGovern, who has been in treatment with me since 1991. Mr. MacGovern has had a major depression, recurrent, which is being successfully treated with an antidepressant medication.
>
> He is able to fully function at work, but should not be required to participate in overtime on a mandatory basis. Instead, he ought to be offered the opportunity to perform overtime work on a voluntary basis. Mandatory overtime places him at risk for a recurrence of the depression.
>
> I will continue to treat Mr. MacGovern, and am available (with his permission) to answer any questions that may arise.

Pl.'s Local Rule 9(c) Statement Ex. C.

MacGovern delivered this letter to Hamilton's medical department, and one week later, on July 10, 1997, Martha Blither, a nurse employed by Hamilton, sent Dr. Cohen the following letter:

> On 7-8-97, I received your note requesting no mandatory overtime for Mr. MacGovern. Since his whole department is on mandatory overtime, a selective/optional overtime policy regulated by the employee is not possible at this moment. Therefore, to comply with your concerns, we have temporarily restricted his overtime for the next six months. This accommodation will ensure that we do not place him at risk for recurrence of depression. Please call me if you have any questions.

Pl.'s Local Rule 9(c) Statement Ex. D.[7]

While MacGovern did not believe that a ban on all overtime was in compliance with Dr. Cohen's instructions and he discussed this belief with Dr. Cohen, MacGovern did not file any grievances as a result of the restriction and Dr. Cohen did not contact Hamilton regarding the restriction.

For the next six months, MacGovern worked his full forty-hour workweeks, but was not allowed to work any overtime. As a result, he fell behind in payments to his creditors.

### II. Standard

"A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material

---

**6.** "Q: As you sit here today, do you know why you were singled out that weekend? A: No." MacGovern Dep. at 95.

**7.** While Blither's letter indicates that MacGovern's department was subject to mandatory overtime, Hamilton draws a distinction between an entire department being on mandatory overtime and one employee being selected to work mandatory overtime. MacGovern's department was not on mandatory overtime until September 1997 (and Blither's letter was written in July 1997), but Hamilton claims that demands occasionally necessitate mandatory overtime from only one or a few employees in a particular job code or department. While MacGovern denies that this in fact is the arrangement, the Court's holding on the threshold question of "disability" obviates the need to consider evidence in the record regarding the reasonableness of the accommodation.

fact to be tried and that the facts as to which there is no issue warrant judgment for the moving party as a matter of law." *Farias v. Instructional Sys.*, 259 F.3d 91, 97–98 (2d Cir.2001) (citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court "must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Cifra v. GE*, 252 F.3d 205, 216 (2d Cir. 2001), *citing, inter alia, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[I]f there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir.2001), *citing Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir.2000).

"Once a party moving for summary judgment has made the requisite showing that there is no factual dispute, the nonmoving party bears the burden of presenting evidence to show that there is, indeed, a genuine issue for trial." *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir.2001), *citing Celotex*, 477 U.S. at 323–324, 106 S.Ct. 2548. The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir.2001), *quoting Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348.

"Summary judgment is appropriate even in discrimination cases [and] trial courts should not treat discrimination differently from other ultimate questions of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000), *citing, inter alia, Reeves v. Sanderson Plumbing Prods., Inc.*, 530

U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal citations and quotations omitted).

III. Analysis

█ The ADA makes it unlawful for a covered employer to "discriminate against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). "A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a prima facie case." *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869 (2d Cir.1998), *citing Wernick v. Federal Reserve Bank of N.Y.*, 91 F.3d 379, 383 (2d Cir.1996).

Specifically, a plaintiff must initially establish that his employer is subject to the ADA, he suffers from a disability within the meaning of the ADA, he could perform the essential functions of his job with or without reasonable accommodation, and he suffered an adverse employment action because of his disability. *See Ryan*, 135 F.3d at 869–870, *citing Bates v. Long Island R.R. Co.*, 997 F.2d 1028. 1035 (2d Cir.1993) and *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir.1994).

█ The element of the prima facie case at issue here is whether MacGovern is disabled. The ADA defines disability as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). The appropriate analysis of MacGovern's claim is thus under subsection (A) of 42 U.S.C. § 12102(2), which addresses actual disability.[8]

---

8. In his complaint, MacGovern claims to be actually suffering from a disability under sub-

section (A). Am. Compl. ¶ 7. MacGovern's opposition brief to the instant motion raises

■ In *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), the Supreme Court articulated a three-step process for determining whether a plaintiff has a disability under subsection (A). First, the Court determined whether the plaintiff suffered from a physical or mental impairment. *Id.* at 631, 118 S.Ct. 2196. Next, the Court identified the life activity upon which the plaintiff relied and "determine[d] whether it constitutes a major life activity under the ADA." *Id.* Finally, "tying the two statutory phrases together, [the Court determined] whether the impairment substantially limited the major life activity." *Id.*

"In order to be eligible to prevail upon a further showing of discrimination, a plaintiff must satisfy each of the three prongs." *Colwell v. Suffolk County Police Dep't.*, 158 F.3d 635, 641 (2d Cir.1998).

### A. Impairment

■ The EEOC regulations define a mental impairment as "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2).

Based on Dr. Cohen's diagnosis of depression and seasonal affective disorder and Cohen's contemporaneous medical records supporting that diagnosis, a reasonable jury could conclude that MacGovern suffers from an "impairment" under the ADA.

### B. Major Life Activity

"The need to identify a major life activity that is affected by the plaintiff's impairment plays an important role in ensuring that only significant impairments will enjoy the protection of the ADA." *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 152 (2d Cir.1998).

■ "In deciding whether a particular activity is a 'major life activity,' [the Court must] ask whether that activity is a significant one within the contemplation of the ADA, rather than whether that activity is important to a particular plaintiff." *Colwell*, 158 F.3d at 642.

In MacGovern's opposition to summary judgment, he relies on sleeping as a major life activity and alludes to the existence (but not the identity) of others: "Both Dr. Cohen and the plaintiff identified major life activities that are substantially limited by the plaintiff [sic] disability. Among the major life activities named, one such major life activity is sleeplessness [sic]." Pl.'s Opp'n Summ. J. at 7. The Second Circuit has held that sleep is "undoubtedly" a major life activity. *Colwell*, 158 F.3d at 643.

■ Most activities mentioned in MacGovern's deposition do not rise to the level of major life activities under Second Circuit case law. While MacGovern claims general difficulties in life, he cannot identify any specific activities other than relatively minor undertakings such as doing his taxes and getting motivated to do house and yard work. In *Colwell*, the Second Circuit "winnow[ed] out many of the impaired activities alleged in this case (such as golf and mall shopping) on the ground that they are insufficiently fundamental." *Colwell*, 158 F.3d at 642.

---

for the first time the argument that Hamilton regards him as disabled, implicating subsection (C). At most, MacGovern has presented evidence that Hamilton was aware of his depression, but " 'the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action.' " *Reeves*, 140 F.3d at 153, quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir.1996).

Specifically, the *Colwell* court rejected the following activities: driving, doing mechanical work on cars, performing housework other than basic chores, going shopping in the mall, skiing, golfing, moving furniture, doing yard work, painting and plastering, planting a garden, shoveling snow and exercising. *Id.* at 643. The activities rejected by the *Colwell* court surpass the day-to-day difficulties MacGovern has identified as being impacted by his impairment, and even they were insufficient even in the aggregate to support a jury verdict in plaintiffs' favor.[9]

A reasonable inference from Dr. Cohen's letter of July 3rd and MacGovern's complaints about being forced to work overtime, however, is the claim that MacGovern's impairment implicates his ability to work. The ability to work is a major life activity under the ADA. *See* 29 C.F.R. § 1630.2(i) (including "working" in an illustrative list of major life activities).

C. "Substantially Limits"

The third step in the *Bragdon* analysis is to inquire whether the impairment at issue substantially limits the major life activities identified in step two. *See Colwell,* 158 F.3d at 643.

"Although almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled. Thus, in assessing whether a plaintiff has a disability, courts have been careful to distinguish between impairments which merely affect major life activities from those that substantially limit those activities." *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 870 (2d Cir.1998).

■ The determination of whether an impairment substantially limits a major life activity is made on an individualized, case-

by-case basis. *See Reeves,* 140 F.3d at 151; 29 C.F.R. § 1630.2(j)(1). The EEOC implementing regulations define the term "substantially limits" to mean:

(1) Unable to perform a major life activity that the average person in the general population can perform; or

(2) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

The regulations further provide that when determining whether an individual is substantially limited in a major life activity, the fact-finder must consider the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact (or expected impact) of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2). The language of these regulations demonstrates that the inquiry is a comparative one.

1. Sleep

■ The only evidence in the record regarding sleep is the following exchange at MacGovern's deposition:

Q: Do you have difficulty sleeping because of your depression?

A: Yes.

Q: All the time or sometimes?

A: Sometimes.

Q: How often?

---

9. *Colwell* reversed a jury verdict in favor of the plaintiffs.

A: Depends on the time of the year, what's going on in my life, circumstances. There's a lot involved.

MacGovern Dep. at 207–208.

MacGovern's occasional sleeplessness must be measured against the average person's ability to sleep, recognizing that the stresses and concerns of everyday life impact everyone's ability to get a restful night sleep at times. In *Colwell*, the plaintiff testified that he "usually get[s] a tough night's sleep." 158 F.3d at 644. The court held that this description alone did not constitute a substantial limitation: "Difficulty sleeping is extremely widespread. Colwell made no showing that his affliction is any worse than is suffered by a large portion of the nation's adult population. He failed to establish that the degree of limitation he suffers is substantial." *Id.*

Even with all inferences taken in MacGovern's favor, MacGovern's description of his sleeplessness cannot be characterized as substantially limiting his ability to sleep because the inquiry is necessarily comparative and from his laconic testimony reasonable jurors could not conclude the existence of a limitation greater than that which the average person encounters when confronted with stressful situations.

2. Work

■ MacGovern, by both his own account and Dr. Cohen's account, is fully able to perform the duties of his job during the forty hour workweek. He is also able to work overtime when he feels emotionally able to do so. The only manner in which his impairment limits his ability to work is that he cannot be forced to work overtime.

The Second Circuit defined what constitutes a substantial limitation on the major life activity of working in *Colwell*:

The ability to work is substantially limited (among other indicia) if the plaintiff is 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.' The regulations make clear that 'the inability to perform in a single, particular job does not constitute a substantial limitation in the major life activity of working.'

158 F.3d at 643, *quoting* 29 C.F.R. § 1630.2(j)(3)(i).

Here, by both MacGovern's and Dr. Cohen's accounts, MacGovern has no difficulty performing a highly technical job during a regular, 40–hour workweek and even during voluntary overtime. While mandatory overtime may have been required at his job on the weekend in question, there is no evidence in the record that MacGovern's inability to work mandatory overtime precludes him from performing "a class of jobs or a broad range of jobs in various classes," which is what he must show in order to be substantially limited in the major life activity of working. *See id.*

The evidence is strongly to the contrary, in fact, inasmuch as MacGovern performed his job at Hamilton (an employer with policies and procedures in place for the distribution of mandatory overtime if the need arises) for eighteen years before he was required to work any overtime against his will.

IV. Conclusion

While MacGovern's depression and seasonal affective disorder undoubtedly impact his sleep and his ability to work mandatory overtime, the record lacks any evidence that his impairment substantially limits the major life activities of sleeping and working. MacGovern has therefore failed to establish that he suffers from a

disability within the meaning of the ADA, and Hamilton is thus entitled to judgment in its favor.

Accordingly, for the reasons set forth above, Hamilton's Motion for Summary Judgment [Doc. # 29] is GRANTED, and the Clerk is directed to close this case.

IT IS SO ORDERED.