12-3905-cv
*Troeger v. Ellenville Cent. Sch. Dist.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1.  When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order").  A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of May, two thousand thirteen.

PRESENT:

> PIERRE N. LEVAL,
> JOSÉ A. CABRANES,
> BARRINGTON D. PARKER,
>
> *Circuit Judges.*

_____

MICHAEL TROEGER,

> *Plaintiff-Appellant,*

v.                                                                No. 12-3905-cv

ELLENVILLE CENTRAL SCHOOL DISTRICT,

> *Defendant-Appellee.*

_____

**FOR PLAINTIFF-APPELLANT:**          Michael H. Sussman, Sussman & Watkins, Goshen, NY.

**FOR DEFENDANT-APPELLEE:**          Stephen J. Gaba, Drake, Loeb, Heller, Kennedy, Gogerty, Gaba & Rodd, PLLC, New Windsor, NY.

1

Appeal from a judgment of the United States District Court for the Northern District of New York (Gary L. Sharpe, *Chief Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Plaintiff-appellant Michael Troeger brought this suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*,[1] alleging that his employer, defendant-appellee Ellenville Central School District (the "School District"), discriminated against him because of his disability. Particularly, Troeger alleges that, following on-the-job back injuries in 2004 and 2005, the School District improperly forced him to use "sick days" for his absences caused by these injuries and refused to reasonably accommodate his condition.

In a Memorandum Decision and Order dated May 8, 2012, the District Court granted summary judgment to the School District with regard to all of Troeger's claims that arose from the School District's actions prior to November 7, 2007, on the basis that those claims were made in his administrative complaint[2] more than 300 days after their accrual and were therefore untimely. *Troeger v. Ellenville Cent. Sch. Dist.*, No. 1:10-cv-718 (GLS/DRH), 2012 WL 1605532, at *3–4 (N.D.N.Y. May 8, 2012) ("*Troeger I*"). In the same decision, the District Court denied the School District's motion for summary judgment with regard to Troeger's other failure to accommodate claim, which was based on the School District's actions after November 2007. The Court concluded that "a reasonable jury could find that his back ailments constitute a qualifying disability." *Id.* at *4.

Following the School District's motion for reconsideration, however, the District Court reversed course, granting summary judgment on the remaining claim in a Memorandum Decision and Order dated August 23, 2012. This time, the Court concluded that Troeger had not shown "a substantial limitation of any major life activities during the relevant time period" and therefore did not qualify as "disabled" within the meaning of the ADA following his return to work in 2007. *Troeger v. Ellenville Cent. Sch. Dist.*, No. 1:10-cv-718 (GLS/DRH), 2012 WL 3643839, at *4 (N.D.N.Y. Aug. 23, 2012) ("*Troeger II*").

This appeal followed. We assume the parties' familiarity with the facts and procedural history of this case.

---

[1] As the District Court explained, "[b]ecause the conduct in question occurred prior to 2009," the governing law does not incorporate amendments to the ADA that became effective in 2009. *Troeger I*, 2012 WL 1605532, at *2 n.5; *see also, e.g.*, *Wega v. Cntr. for Disability Rights Inc.*, 395 Fed. App'x 782, 784 n.1 (2d Cir. 2010) (unpublished) (noting "an intervening act of Congress" amending the ADA but finding "no indication that Congress intended the ADA Amendments to have retroactive effect"). Neither party disputes this aspect of the District Court's decision.

[2] Troeger filed an administrative action with the Equal Employment Opportunity Commission ("EEOC") on September 2, 2008. The EEOC issued Troeger a right-to-sue letter in 2010, having not reached a conclusive determination regarding his claims.

2

**DISCUSSION**

We review *de novo* the District Court's grant of summary judgment, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in his favor.[3] *See McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), *i.e.*, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

We first address the claims that the District Court dismissed in its Memorandum Decision and Order dated May 8, 2012, particularly concerning whether Troeger's claims based on events prior to November 2007 are time barred. We then consider whether Troeger's medical condition after that date qualifies as a "disability" under the ADA.

**A.**

It is undisputed that a claimant pursuing claims under the ADA must file charges with the EEOC within 300 days of the purportedly unlawful acts, *see* 42 U.S.C. § 12117(a), and that Troeger therefore generally cannot sue the School District for its acts prior to November 7, 2007, because he did not file administrative charges with the EEOC until September 2, 2008, *see* note 2, *ante*. Nonetheless, Troeger argues that his claims based on such acts are still viable because of the "continuing violation doctrine," which applies to claims that by "their very nature involve[ ] repeated conduct," and therefore "[t]he 'unlawful employment practice' . . . cannot be said to occur on any particular day." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). The District Court disagreed, holding that "[t]he [School] District's alleged failure to accommodate Troeger's disability during the 2007-08 school year is the only act which falls within the limitations period." *Troeger I*, 2012 WL 1605532, at *3.

---

[3] Troeger also argues that the District Court "abused its discretion" by reconsidering its prior denial of the School District's motion for summary judgment. Although we review for an "abuse of discretion" a district court's decision to reconsider an earlier order, *see Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), a district court's decision prior to final judgment to correct an earlier mistake will rarely, if ever, be an "abuse" of its discretion. *See In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining that an "abuse of discretion" includes errors of law, a clearly erroneous assessment of the evidence, or "a decision that cannot be located within the range of permissible decisions" (internal quotation marks omitted)). It is true, of course, that motions for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided," *Shrader*, 70 F.3d at 257, but when the finality of a judgment is not at issue, and the district court merely wishes to correct an error in an earlier denial of a motion to dismiss or motion for summary judgment, the district court is fully within its discretion to do so based on material facts or relevant law that it overlooked or misunderstood in its earlier decision. *See id.* (articulating the standard for motions to reconsider); *see also I.N.S. v. Doherty*, 502 U.S. 314, 330 (1992) (Scalia, J., concurring in part and dissenting in part) ("Whether discretion has been abused in a particular case depends, of course, upon the scope of the discretion."). Accordingly, because the District Court correctly decided that summary judgment was appropriate under governing law, the Court did not err, much less "abuse its discretion," by granting the School District's motion for reconsideration.

We agree with the District Court's conclusion for substantially the reasons stated in the Court's Memorandum Decision and Order dated May 8, 2012. *See id.* at *3–4. The School District informed Troeger prior to November 2007 that his absences would count as sick days. Any claim based on that decision is thus based on a "discrete act" rather than a continuing violation, since that "single act" would, if unlawful, "be actionable on its own." *Morgan*, 536 U.S. at 115.[4]

Similarly, any alleged failure to accommodate Troeger's disability during the 2006-07 school year would have been actionable at the time of the relevant decisions refusing to accommodate Troeger's disability. Troeger cannot file an untimely claim simply by alleging that the School District's noncompliance "continued," or that the School District engaged in similar unlawful actions during subsequent years. *See Morgan*, 536 U.S. at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").

**B.**

We now turn to Troeger's remaining claim for failure to accommodate based on the School District's actions between November 2007 and the end of the 2007-08 school year. Having conducted a *de novo* review of the record, construing all evidence in Troeger's favor, we conclude that Troeger has failed to establish a *prima facie* case of failure to accommodate for substantially the reasons stated in the District Court's Memorandum Decision and Order dated August 23, 2012. *See Troeger II*, 2012 WL 3643839, at *1–4.

As relevant here, a claim for failure to accommodate under the ADA requires the plaintiff to show that he suffers from a "disability." For the purposes of Troeger's claim—based on the School District's relevant conduct in 2007 and 2008—the ADA defined "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(2)(A) (2008). As the Supreme Court explained, "these terms need to be interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002) ("*Toyota*"). Under this approach, a "major" life activity is one that is "of central importance to daily life," such as "walking, seeing, and hearing." *Id.* Moreover, the degree of

---

[4] While Troeger was absent during the 2005-06 and 2006-07 school years, he received his normal salary because worker's compensation proceedings were ongoing. Following the decision in August 2007 that Troeger did not qualify for worker's compensation, the School District charged his prior absences against his sick leave, resulting in accumulated sick leave of *negative* 200 days, as of June 30, 2007. The School District has since applied Troeger's annual sick days to "recoup" his previous overuse of sick days. Troeger argues that he did not learn about this "recoupment" policy until January 2009, and therefore his claim of discrimination with respect to that policy is timely. We need not consider this argument in terms of its timeliness, however, because Troeger has not presented any evidence suggesting that the School District's "recoupment" policy is discriminatory. Troeger's sick days are being "recouped" simply because he did not have sufficient sick days to cover his absences from 2005 to 2007. *See Troeger I*, 2012 WL 1605532, at *6 ("Although considerable caution is required at this stage of a discrimination case, Troeger has offered only conclusory allegations that the District docked his sick leave because of his disability. Accordingly, to the extent that Troeger's sick leave claims may be construed as having accrued after November 7, 2007, they are dismissed.").

4

impairment must be significant enough to "substantially limit[ ]" the major life activity. 42 U.S.C. § 12102(2)(A) (2008). "Although almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled." *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998). Rather, "in assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities." *Id.* (emphases omitted) (citing *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir. 1995)).

When Troeger returned to work in late 2007, his physician explained that he had recovered such that he "has no significant restrictions on driving, walking, standing, sitting, or climbing stairs," but Troeger's lifting restriction of 20 pounds remained in effect. Joint App'x 148. Based in part on this evidence, the District Court correctly concluded that Troeger has not shown a genuine issue of fact regarding a *substantial* limitation of a *major* life activity. *See Toyota*, 534 U.S. at 197. As the District Court explained, Troeger was capable of both sitting and working. *See id.* at 200 ("[E]ven assuming that working is a major life activity, a claimant would be required to show an inability to work in a broad range of jobs, rather than a specific job." (internal quotation marks omitted)). And although lifting light objects may be a major life activity, *see Ryan*, 135 F.3d at 870 (citing U.S. Equal Employment Opportunity Commission, *Americans with Disabilities Act Handbook* I-27 (1992)), an individual is not "disabled" merely because he cannot lift heavier objects weighing, for instance, around twenty pounds, *see Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 644 (2d Cir. 1998); *see also, e.g.*, *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 152 (4th Cir. 2012) (restriction from lifting heavy objects did not constitute a "disability"); *Lytes v. DC Water & Sewer Auth.*, 572 F.3d 936, 944 (D.C. Cir. 2009) (collecting similar cases and concluding that, "under the 'demanding standard' of *Toyota*," evidence of not being able to lift heavy objects "creates no triable issue as to whether [an individual] had a substantial limitation with respect to lifting").

## CONCLUSION

We have reviewed all of Troeger's arguments and find them to be without merit. Accordingly, the judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk